# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION |
| | : | No. 14-520-3 |
| SHAWN MILLS | : | |
| | : | |

**McHUGH, J.** July 2, 2018

## MEMORANDUM

A jury found Defendant Shawn Mills guilty of conspiracy to distribute cocaine from late 2013 to March 2014, in violation of federal drug laws 28 U.S.C. §§ 846 and 841(a)(1). Jury Verdict Sheet 1, ECF No. 200. After trial, Mills filed a timely Motion for New Trial or Arrest of Judgment, ECF No. 210, pursuant to Federal Rules of Criminal Procedure 29(c), 33, and 34. For the reasons that follow, Mills's Motion will be denied.

Rule 29 authorizes courts to set aside a jury's verdict or enter an acquittal upon a defendant's timely post-trial motion. Fed. R. Crim. P. 29(c)(1). In reviewing a Rule 29 motion, courts apply "a particularly deferential standard of review, viewing the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (citations omitted) (explaining that this standard governs Rule 29 determinations by the Third Circuit and district courts alike). Such a claim, alleging insufficiency of the evidence, places a "very heavy burden" on the defendant. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citations omitted).

The same is not true of Rule 33, which provides for a different standard of review—one that is less deferential to the prosecution. Rule 33 allows courts to vacate any judgment and grant a new trial "if the interest of justice so requires." As the Third Circuit explained:

> A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted. Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.

*United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted).

Because Rule 33 is more protective of the rights of defendants than Rule 29 and therefore imposes a lower burden on Mills, I begin with Mills's Rule 33 claim. In his Motion, Mills contends that "the Government was unable to present any evidence that the person speaking on the recorded conversations was [Mills]," that "there was no credible evidence that linked [Mills] to the conspiracy," and that the jury's guilty verdict on Count One was therefore against the weight of the evidence. Def.'s Mot. 1. Having presided over the ten-day trial of Mills and his co-defendants, I must disagree.

At Mills's trial, it was the Government's burden to prove a "shared unity of purpose" between Mills and his alleged co-conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. *See United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) (setting out the "essential elements" of a drug distribution conspiracy under 21 U.S.C. § 846). An agreement to commit an unlawful act—the "essence" of conspiracy—need not be explicit but "can instead be inferred from the facts and circumstances of the case." *Iannelli v. United States*, 420 U.S. 770, 777 & n.10 (1975). In Mills's case, the Government proved this agreement by presenting evidence that a person who called himself "Lil Shawn" while using a phone registered to Defendant Mills's name and address agreed with co-defendant Church to

obtain cocaine for distribution, contributed money for its purchase, repeatedly checked the status of the cocaine, and, when none materialized, demanded his money back.

The government's evidence included testimony by law enforcement officers, fact and expert witnesses, electronic and physical surveillance, intercepted phone calls and text messages (part of a court-authorized wiretap), public records, and telephone records. The evidence showed that Mills called Defendant Church on December 18, 2013, to ask whether Church could refill Mills's supply of cocaine. Trial Tr. 20 (June 6, 2017). An hour later, Church called Mills, asking him to come to where Church was but Mills responded that he was at home across from the Crozer Medical Center. (Mills was on house arrest at the time so was required to be present at his home, located directly across the street from the Crozer Medical Center.) Church responded that he would come by to resupply Mills. *Id.* at 21. Less than an hour later, Church called Mills to clarify where Mills's house was and said that he was right outside. *Id.* at 22. On February 6, 2014, Mills called Church again to ask to buy cocaine. When Church said that he did not have any available, Mills responded that he would try to hold off on buying from another source and would wait until Church resupplied. *Id.* at 24.

Less than a week later, Mills contacted Church again, this time using a different number. He texted Church, saying "Yo cuz, lil Shawn, i need yu, yu got me." *Id.* at 49–50. FBI and DEA agents assigned to the wiretap obtained subscriber information for the new number and determined that it was registered to Shawn Mills at his home address (across from Crozer). *Id.* at 50. That same day, Church texted Defendant Pinkney to tell Church where in California to send money so that Pinkney could purchase the new supply. *Id.* at 58. Two days later, on February 14, 2014, Pinkney told Church he needed more money to get the deal done. *Id.* at 60–61. Pinkney asked Church to send money by Western Union, and Church responded that he would

3

get $1,500 and would wire it to Pinkney. *Id.* at 63. Just a half hour later, Church called Mills and asked if he could provide the money. Mills texted back: "come get it" and "I'm at the crib." *Id.* at 34–65. Church immediately called Pinkney to tell him he would get the money and to ask exactly where to send it. An hour and a half later, Church called Pinkney back to tell him Pinkney could pick up the $1,500, and gave him a Western Union routing number. *Id.* at 72.

DEA Agent Barry testified about the business records that helped agents track the Western Union transaction, including Western Union records showing a wire transfer of $1,500 from "Paris Church" to "Michael Tinkey" that originated in Chester, PA, and was picked up in Concord, CA. *Id.* at 10–18. Agents learned through an intercepted phone call that this was an accidental misspelling of Defendant Michael Pinkney's name by Church.

A day later, on February 15, 2014, Mills texted Church, "we on"—a message that expert witness Agent Updegraff interpreted as a question about the status of the cocaine supply. *Id.* at 79. Church called Mills later that day and told him things were "on ice" but that everything would be good. *Id.* at 82. Over the next few days, Church and Pinkney communicated by text about shipping the cocaine by Federal Express and Pinkney confirmed that the package had shipped. On February 19, 2014, Mills texted Church again to ask about the status of the cocaine. *Id.* at 92. Again, Church called Mills and replied that they were still waiting and, if it did not arrive, Church would give Mills his money back. *Id.* at 93. On the call, Mills and Church also discussed the price and scarcity of cocaine at the moment, and Mills debated buying from another source but ultimately decided to wait for Church's supply. *Id.* at 93–97.

Federal agents intercepted the package before it reached Church, and, when he did not receive it, Church began to inquire with FedEx. Trial Tr. 18–21 (June 7, 2017). Mills began contacting Church again about the cocaine, asking whether it had arrived—"did it come yet"—

4

and saying that he needed the cocaine or his money back. *Id.* at 59. Mills's text messages to Church continued into March, asking what was going on. *Id.* On March 12, 2014, about one month after Mills had given Church the $1,500, Mills texted Church: "it's been a whole month, cuz. I need that." *Id.* at 59–60. And, a few days later: "You've been holding onto mines for a while. I need that. Can you call me, please?" *Id.* at 60. Mills's texts to Church continued throughout March. *Id.* at 60–62.

In addition to this extensive wiretap and business record evidence, Pinkney, a cooperating defendant, testified at trial that Church had told him that his little cousin, Shawn, had supplied the $1,500 needed to purchase the cocaine.

It should be noted that at trial, the Government acknowledged that it also intercepted calls on Defendant's phone where someone other than him was speaking. I am satisfied, however, that the agents and prosecutors alike took care at trial to identify the speaker on each call, and that no call was attributed to Mills when anyone else was using his phone.

Ultimately, the jury found Defendant Mills guilty of conspiracy to possess with the intent to distribute a mixture containing cocaine (Count One) and not guilty of Count Two, a related attempt charge. Jury Verdict Sheet 1–2. Considering the record set forth above, and viewing it independently rather than in a light favorable to the government, it is my judgment that the evidence presented at trial was entirely adequate to support the jury's verdict, and that no miscarriage of justice occurred. Rational jurors could easily have concluded from this evidence that Mills agreed with Church to buy a large supply of cocaine for distribution, an unlawful act. In fact, the jurors took care in answering the interrogatory as to the amount of drugs involved to distinguish between Mills and Church. Therefore, no new trial is warranted. Having so held,

5

there is no need to conduct a separate Rule 29 analysis, which would only be weighted in favor of the government. Defendant Mills's Rule 29 and Rule 33 arguments are rejected.

Turning to Mills's final claim for relief, Rule 34 requires a court to "arrest judgment if the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). Mills makes no argument as to why this Court would lack jurisdiction over the offense on which he was convicted—a federal drug conspiracy charge, 21 U.S.C. §§ 846, 841(a)(1)—and I can discern no merit to his challenge. Accordingly, it is denied. *See United States v. Martorano*, 541 F. Supp. 1226, 1227 (E.D. Pa. 1982), *aff'd*, 709 F.2d 863 (3d Cir. 1983) (denying defendant's Rule 34 motion that included no support for the contention that the court lacked jurisdiction); *United States v. Nacrelli*, 468 F. Supp. 241, 244 (E.D. Pa. 1979), *aff'd*, 614 F.2d 771 (3d Cir. 1980) (holding the same, and stating that the court found defendant's bald invocation of the rule meritless).

No new trial is warranted.

    /s/ Gerald Austin McHugh
United States District Judge